**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

**VICTOR ALLEN BENTLEY**                                                         **PLAINTIFF**

**v.**                                                     **CIVIL ACTION NO. 3:16-CV-P596-GNS**

**TERESA BAILEY** *et al*.                                                       **DEFENDANTS**

### MEMORANDUM OPINION AND ORDER

Plaintiff Victor Allen Bentley, a prisoner incarcerated in the Hardin County Detention Center (HCDC), filed a *pro se* complaint under 42 U.S.C. § 1983. This matter is before the Court for initial review of the complaint pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601, 608 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007). For the reasons that follow, the Court will allow the Fourteenth Amendment due process claims against Defendants Bailey and Hinote in their individual capacity to proceed. All other claims and Defendants will be dismissed from this action.

### I.  SUMMARY OF CLAIMS

Plaintiff identifies four Defendants in this action: (1) Teresa Bailey, Class D Coordinator at HCDC; (2) Walter Hinote, Captain at HCDC; (3) Danny Allen, Jailer of HCDC; and (4) Robert Reynolds, Lieutenant at HCDC. Plaintiff sues Defendants in their individual and official capacities. As requested relief, Plaintiff seeks punitive damages and that "any subsequent punishment [be] reversed."

In his complaint, Plaintiff states that August 12, 2016, he was moved from the work facility to the main jail where he was questioned by Defendants Bailey and Hinote "concerning a letter that was returned to [his] name." Plaintiff states that he informed these Defendants that he

"was not familiar with the letters." Thereafter, according to Plaintiff, "they told the floor officer to 'lock[him] down.'" Plaintiff states that at this time, he "was not aware of any write up."

Plaintiff states that on August 14, 2016, he sent a request to Defendant Reynolds asking the nature of his violation and punishment. According to Plaintiff, Defendant Reynolds told him that he had been "advised as to why [he was] moved by Cpt. Hinote & the Class D Cooridinator. Your write up was sent to D.O.C. for Custody level Review." Plaintiff states that he "was never informed what violation [he] was being accused of."

Plaintiff states that the inmate handbook "says that every inmate has the right to know of any violation and the punishment." Further, according to Plaintiff, the officer is to prepare a report and deliver it to the jailer who is to provide the inmate "written notifications of the charges on the appropriate forms, inform them they have the right to request a hearing, and within a specified period of time." Plaintiff asserts that his right to due process has been violated by "not allowing [him] to know that (1) [he] received a write up (2) what the write up was, and (3) that [he] could appeal." Plaintiff states that Defendants did not follow their own procedures. Further, Plaintiff states that the "conviction of a write-up can cause (1) good time loss, (2) security levels to be raised, and (3) segregation time." Plaintiff states that any of these things could prolong his incarceration.

## II. STANDARD OF REVIEW

When a prisoner initiates a civil action seeking redress from a governmental entity, officer, or employee, the trial court must review the complaint and dismiss the complaint, or any portion of it, if it determines that the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A; *McGore v. Wrigglesworth*, 114 F.3d at 604. A claim is

legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 90 U.S. 319, 325 (1989). The trial court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Id.* at 327. In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "But the district court need not accept a 'bare assertion of legal conclusions.'" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d at 488 (quoting *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)). The court's duty "does not require [it] to conjure up unpled allegations," *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979), or to create a claim for a plaintiff. *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975). To command otherwise would require the district court "to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## III.  ANALYSIS

### A.  Official-Capacity Claims

Plaintiff asserts due process claims against Defendants in their official capacities. "Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'"  *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (quoting *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690 n.55 (1978)).  Suing Defendants in their official capacities is the equivalent of suing their employer, Hardin County. *See Lambert v. Hartman*, 517 F.3d 433, 439-40 (6th Cir. 2008) (stating that civil rights suit against county clerk of courts in his official capacity was equivalent of suing clerk's employer, the county); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994) (advising that suing the police chief in his official capacity is the equivalent of suing the county); *Smallwood v. Jefferson Cty. Gov't*, 743 F. Supp. 502, 503 (W.D. Ky. 1990) (concluding that a suit against the Jefferson County Government, the Jefferson County Fiscal Court, and the Jefferson County Judge Executive is actually a suit against Jefferson County itself).

When a § 1983 claim is made against a municipality, this Court must analyze two distinct issues:  (1) whether Plaintiff's harm was caused by a constitutional violation; and (2) if so, whether the municipality is responsible for that violation.  *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992).  The Court will first address the second issue, *i.e.*, whether the municipality is responsible for the alleged constitutional violation.

"[A] municipality cannot be held liable *solely* because it employs a tortfeasor -- or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. at 691; *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994); *Berry v. City of Detroit*, 25 F.3d 1342, 1345 (6th Cir. 1994).

"The 'official policy' requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986).

A municipality cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. at 694; *Deaton v. Montgomery Cty., Ohio*, 989 F.2d 885, 889 (6th Cir. 1993). Simply stated, "a plaintiff must 'identify the policy, connect the policy to the [county] itself and show that the particular injury was incurred because of the execution of that policy.'" *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993) (quoting *Coogan v. City of Wixom*, 820 F.2d 170, 176 (6th Cir. 1987), *overruled on other grounds by Frantz v. Vill. of Bradford*, 245 F.3d 869 (6th Cir. 2001)). The policy or custom "must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under § 1983." *Searcy v. City of Dayton*, 38 F.3d at 286 (quoting *Polk Cty. v. Dodson*, 454 U.S. 312, 326 (1981) (citation omitted))

In the instant case, Plaintiff has not alleged that the implementation of a municipal policy or custom caused his alleged harm. As nothing in the complaint demonstrates that any purported wrongdoing occurred as a result of a policy or custom implemented or endorsed by Hardin County, the complaint fails to establish a basis of liability against the municipality.

Accordingly, the official-capacity claims will be dismissed for failure to state a claim upon which relief may be granted.

### B. Individual-Capacity Claims

#### 1. Defendant Allen

Plaintiff names Danny Allen, the Jailer at HCDC, as a Defendant in this action. However, Plaintiff makes no allegations against him in the complaint. "It is axiomatic that a complaint under 42 U.S.C. § 1983 must show a causal connection between the named defendants and the alleged constitutional deprivation; the doctrine of *respondeat superior* has no application thereunder." *Cox v. Barksdale*, No. 86-5553, 1986 WL 18435, at *1 (6th Cir. Nov. 13, 1986) (citing *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)). "Where a complaint alleges no specific act or conduct on the part of the defendant and the complaint is silent as to the defendant except for his name appearing in the caption, the complaint is properly dismissed . . . ." *Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974); *see also LeMasters v. Fabian*, No. 09-702 DSD/AJB, 2009 WL 1405176, at *2 (D. Minn. May 18, 2009) ("To state an actionable civil rights claim against a government official or entity, a complaint must include specific factual allegations showing how that particular party's own *personal* acts or omissions directly caused a violation of the plaintiff's constitutional rights.").

Having failed to allege any conduct on the part of Defendant Allen that violates Plaintiff's rights, the individual-capacity claim against him will be dismissed. Further, there being no remaining claims against him, Defendant Allen will be dismissed from this action for failure to state a claim upon which relief may be granted.

#### 2. Defendant Reynolds

As to Defendant Reynolds, who Plaintiff identifies as a lieutenant at HCDC, Plaintiff states that this Defendant responded to Plaintiff's inquiry about his placement in lock down. Plaintiff states that Defendant Reynolds told Plaintiff "you were advised as to why you were

moved by Cpt. Hinote & the Class D Cooridinator. Your write up was sent to D.O.C. for Custody level Review." In his complaint, Plaintiff does not set forth any other actions as to Defendant Reynolds.

To state a claim under § 1983, a plaintiff must allege that (1) a right secured by the Constitution or a federal statute has been violated, and (2) the violation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Flanory v. Bonn*, 604 F.3d 249, 253 (6th Cir. 2010). A complaint filed under § 1983 must show a causal connection between each of the named Defendants and the alleged constitutional deprivation. A § 1983 complaint must allege that specific conduct by each Defendant was the proximate cause of the constitutional injury. *King v. Massarweh*, 782 F.2d 825, 828-29 (9th Cir. 1986). "Congress did not intend § 1983 liability to attach where causation is absent." *Deaton v. Montgomery Cty. Ohio*, 989 F.2d at 889. In the present case, as to Defendant Reynolds, Plaintiff fails to set forth any facts showing how he was involved in the alleged violation of Plaintiff's rights.

Having failed to allege any conduct on the part of Defendant Reynolds that violates Plaintiff's rights, the individual-capacity claim against him will be dismissed. Further, there being no remaining claims against him, Defendant Reynolds will be dismissed from this action for failure to state a claim upon which relief may be granted.

### 3. Defendants Bailey and Hinote

Plaintiff alleges that Defendants Bailey and Hinote violated his right to due process by placing him in lockdown without providing him with a written copy of a violation and informing him of the nature of the violation and his right to appeal.

7

In *Sandin v. Conner*, 515 U.S. 472 (1995), the Supreme Court significantly restricted prisoners' § 1983 claims for relief based on issues concerning due process. The Court made a marked departure from its earlier decisions concerning recognized liberty interests, and instead limited due process liberty interests created by prison regulations "to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id*. at 484 (citations omitted). Noting that punishment of incarcerated prisoners is aimed at effectuating prison management and prisoner rehabilitative goals, the Court found that "[d]iscipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law." *Id.* at 485. The *Sandin* Court found no liberty interest in the inmate's 30-day placement in disciplinary segregation.

Thereafter, in *Wilkinson v. Austin*, 545 U.S. 209 (2005), the Supreme Court found that Ohio prisoners possessed a liberty interest in avoiding assignment to Ohio State Penitentiary (OSP), the state's only Supermax facility,[1] as the totality of the conditions at OSP "imposes an atypical and significant hardship under any plausible baseline." *Id.* at 223. The Court reasoned,

> For an inmate placed in OSP, almost all human contact is prohibited, even to the point that conversation is not permitted from cell to cell; the light, though it may be dimmed, is on for 24 hours; exercise is for 1 hour per day, but only in a small indoor room. Save perhaps for the especially severe limitations on all human contact, these conditions likely would apply to most solitary confinement facilities, but here there are two added components. First is the duration. Unlike the 30-day placement in *Sandin*, placement at OSP is indefinite and, after an initial 30-day review, is reviewed just annually. Second is that placement disqualifies an otherwise eligible inmate for parole consideration. *Austin I*, 189 F. Supp. 2d, at 728. While any of these conditions standing alone might not be

---

[1] "Supermax facilities are maximum-security prisons with highly restrictive conditions, designed to segregate the most dangerous prisoners from the general prison population." *Wilkinson v. Austin*, 545 U.S. at 213.

8

>sufficient to create a liberty interest, taken together they impose an atypical and significant hardship within the correctional context. It follows that respondents have a liberty interest in avoiding assignment to OSP. *Sandin*, *supra*, at 483, 115 S. Ct. 2293.

*Wilkinson v. Austin*, 545 U.S. at 223-24. Thus, "[i]n deciding whether changes to an inmate's conditions of confinement implicate a cognizable liberty interest, both *Sandin* and *Austin* considered the nature of the more-restrictive confinement *and* its duration in relation to prison norms and to the terms of the individual's sentence." *Harden-Bey v. Rutter*, 524 F.3d 789, 792 (6th Cir. 2008).

It is unclear from the complaint how long Plaintiff remained in lockdown or what the conditions were like while he was in lockdown. The Court must read the complaint in the light most favorable to Plaintiff. Doing so, the Court will allow the due process claims to proceed at this time against Defendants Bailey and Hinote in their individual capacities.

## IV. ORDER

For the reasons set forth more fully above, and the Court being otherwise sufficiently advised, **IT IS ORDERED** as follows:

(1) that the official-capacity claims against all Defendants are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted;

(2) that the individual-capacity claims against Defendants Allen and Reynolds are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted;

(3) there being no remaining claims against them, **Defendants Allen and Reynolds** are **DISMISSED** from this action.

The **Clerk of Court** is **DIRECTED** to terminate Danny Allen and Robert Reynolds as Defendants from the docket of this action.

**IT IS FURTHER ORDERED** that the Fourteenth Amendment due process claims against Defendants Bailey and Hinote in their individual capacities will proceed.

The Court will enter a separate Scheduling Order directing service and governing the development of the continuing claims. In permitting these claims to continue, the Court passes no judgment on the merits and ultimate outcome of the action.

Date: January 30, 2017

**Greg N. Stivers, Judge**
**United States District Court**

cc: Plaintiff, *pro se*
　　Defendants
　　Hardin County Attorney
4416.003